UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MELISSA ORTIZ,

               Plaintiff,

   v.

BAYER CORPORATION, BAYER A.G.,
BAYER PHARMA A.G.,
BAYER HEALTHCARE LLC,
BAYER ESSURE INC. f/k/a CONCEPTUS, INC.,
and BAYER HEALTHCARE
PHARMACEUTICALS INC.,

               Defendants.

-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

20-cv-04266 (DG) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      Presently before the Court is Bayer Corporation, Bayer A.G., Bayer Pharma A.G., Bayer Healthcare LLC, Bayer Essure Inc. f/k/a Conceptus, Inc., and Bayer Healthcare Pharmaceuticals Inc.'s ("Bayer" or "Defendants") Renewed Motion to Dismiss the Complaint for Failure to State a Claim at Electronic File Number ("ECF No.") 39.  Plaintiff responded to the Motion to Dismiss at ECF No. 40, and Defendants then replied at ECF No. 42.  The Motion was referred to the undersigned by District Judge Diane Gujarati on October 28, 2022.  As explained herein, the Court recommends that Judge Gujarati GRANT IN PART the Motion to Dismiss with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), as to the First and Third Counts of the Amended Complaint at ECF No. 26.  However, the Court recommends that Judge Gujarati deny the Motion Dismiss as to Count Two of the Amended Complaint regarding the alleged Manufacturing Defect.

**I.  BACKGROUND**

    **A.  Procedural History**

      On September 11, 2020, Plaintiff filed the Complaint.  ECF No. 1.  In response,

Defendants then filed a letter motion seeking a pre-motion conference regarding a proposed motion to dismiss.  ECF No. 7.  On March 9, 2021, Judge Gujarati issued a scheduling order for the anticipated motion to dismiss.  March 9, 2021 Order.  The parties' briefs on the motion were filed on June 3, 2021, ECF Nos. 19-22, and Judge Gujarati held oral arguments on February 4, 2022, ECF No. 24.  As per Judge Gujarati's Order at the February 4, 2022 Conference, "[f]or reasons stated on the record, Plaintiff was granted leave to file an amended complaint. . . . In light of the amended complaint, the [] Motion to Dismiss was denied without prejudice to renew[.]"  ECF No. 24.  On March 14, 2022, Plaintiff filed an Amended Complaint.  ECF No. 26.  Defendants filed a letter motion for a pre-motion conference for a motion to dismiss the Amended Complaint.  ECF No. 27.  Judge Gujarati denied the motion for a conference and entered a briefing schedule for the motion.  May 11, 2022 Order.  The parties' briefs on the motion were filed on June 28, 2022.  ECF Nos. 39-42.  On October 28, 2022, Judge Gujarati referred the motion to the undersigned for a Report and Recommendation.

      **B.**      **Factual Background**

Plaintiff's Amended Complaint explains that this action is as a result of "permanent injuries sustained by the Plaintiff resulting from the promotion, sale, and distribution of an unreasonably dangerous and defective medical device product known as Essure."  ECF No. 26, ¶ 13.  Essure is a permanent female contraception, which consists of two "micro-inserts" that are placed in a woman's fallopian tubes by a doctor.  *Id.* at ¶¶ 32-33.  Essure is manufactured by Defendant Bayer Healthcare Pharmaceuticals, Inc.  *Id.* at ¶ 6.

Essure is a Class III device that was granted pre-market approval by the United States Food and Drug Administration ("FDA").  *Id.* at ¶ 14; ECF No. 39, p. 1.  According to Defendants, "[i]n 2002 FDA granted Essure [pre-market approval ("PMA")] as a Class III

device, and the FDA has never withdrawn or suspended that PMA." ECF No. 39, p. 3. However, "[f]or commercial reasons, Bayer voluntarily discontinued sales of Essure after December 13, 2018." *Id.* at p. 4.

According to Plaintiff, on or about September 2015, Plaintiff had an Essure medical device implanted into her fallopian tubes. ECF No. 26, ¶ 49. In January 2018 (prior to when Bayer ceased sales of Ensure), Plaintiff began experiencing "extreme abdominal swelling, pain, and an infection due to the Essure device" and "underwent a Subtotal-Hysterectomy on December 17, 2018 with removal of her fallopian tubes." *Id.* at ¶¶ 50-51. According to the Amended Complaint, Plaintiff continues to suffer serious medical conditions as a result. *Id.* at ¶ 52.

Accordingly, Plaintiff's Amended Complaint includes three causes of action against Defendants regarding the alleged injuries caused to Plaintiff by the Essure device: failure to train, manufacturing defect, and breach of express warranty. *Id.* at ¶¶ 49-104.

## II.    LEGAL STANDARDS

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). A Rule 12(b)(6) motion to dismiss should be granted if a plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Federal Rule of Civil Procedure 8 further requires more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" lacking "further factual enhancement." *Id.* at 555-57. Thus, "the plaintiff must provide factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Dains v. Bayer HealthCare LLC*, No. 522-CV-208

3

(BKS/TWD), 2022 WL 16572021, at *3 (N.D.N.Y. Nov. 1, 2022) (citing *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)).

Class III medical devices, such as the Essure device that is at issue in this case, receive significant federal oversight by the FDA. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317 (2008). Premarket approval of such a device is a "rigorous" process, requiring a multivolume application. *Id.* (citations omitted). In fact, "the FDA spends an average of 1,200 hours reviewing each application . . . and grants premarket approval only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness.'" *Id.* at 318 (internal citations omitted). The process also includes a review of the device's proposed labeling. *Id.* Once approval is granted by the FDA, manufacturers cannot make any changes in design, manufacturing, or labeling without FDA approval. *Id.* at 319. "After premarket approval, the device is subject to reporting requirements," including "whether the device may have caused or contributed to death or serious injury." *Id.* Finally, the FDA has the power to withdraw premarket approval if it determines a device is unsafe. *Id.* at 319-20.

In connection with this regulatory framework, Congress passed the Medical Device Amendments of 1976 ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA") to "create[] a scheme of federal safety oversight for medical devices while sweeping back state oversight schemes." *Id.* at 314. The statute includes a preemption clause:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). This statute results in both the express and implied preemption of most state law claims concerning disputes allegedly caused by medical devices regulated by the FDA

4

pursuant to these regulations.

The United States Supreme Court explained that "[s]tate requirements are pre-empted under the MDA only to the extent that they are 'different from, or in addition to' the requirements imposed by federal law." *Riegel*, 552 U.S. at 330 (citation omitted). Therefore, such claims would be *expressly* preempted. However, a state law claim may not be expressly preempted if it is premised on the breach of a duty that is the same as a duty under the FDCA. The *Riegel* Court explained that "§ 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Id*. at 330 (citation omitted).

In addition to this express preemption, a claim also may be *impliedly* preempted if based on noncompliance with the FDCA, since all actions to enforce the FDA requirements "shall be by and in the name of the United States." 21 U.S.C. § 337(a); *see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions" (citing 21 U.S.C. § 337(a))). However, claims that rely on "traditional state tort law" can proceed to the extent they overcome the aforementioned express preemption. *See Buckman Co.*, 531 U.S. at 353 (suggesting claims may proceed if they are based on "traditional state tort law [that] had predated the federal enactments in question[]"); *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 237 (2d Cir. 2021) ("the preemption analysis turns on whether plaintiffs successfully pleaded a traditional state law cause of action that exists separately from the FDCA but does not impose requirements 'different from, or in addition to' the requirements imposed by federal law" (citing 21 U.S.C. § 360k)); *De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1091-92 (N.D. Cal. 2016) ("claims that rely on 'traditional state tort law' may

5

proceed (to the extent they can overcome express preemption)").

This express and implied preemption, therefore, provides a narrow window whereby claims may proceed. "The plaintiff must be suing for conduct that violates the [MDA] (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing because the conduct violates the [MDA] (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013). "In other words, the plaintiff's state-law claim must 'parallel[ ] a federal-law duty under the MDA' but also exist 'independent[ly]' of the MDA." *A.F. v. Sorin Grp. USA, Inc.*, 346 F. Supp. 3d 534, 541 (S.D.N.Y. 2018) (quoting *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013)).

## III.   DISCUSSION

As set for the below, the Court finds as follows regarding the Motion to Dismiss the Amended Complaint: Count One (Failure to Train) is expressly and impliedly preempted and should be dismissed; Count Two (Manufacturing Defect) is not preempted, and Defendants' Motion to Dismiss should be denied; and Count Three (Breach of Warranty) is expressly preempted and should be dismissed.

### A.   <u>Count One: Failure to Train</u>

Plaintiff first alleges Defendants failed to adequately train physicians – both pursuant to FDA training guidelines and under New York law. ECF No. 26, ¶ 57. Plaintiff alleges that Defendants "undertook an independent duty to train physicians, including her physician, on how to properly use Essure and place the micro-inserts but the training Defendants provided 'failed to abide by FDA training guidelines.'" ECF No. 39 at pp. 4-5 (citing *id.*). Plaintiff contends that Defendants failed to properly train physicians in several respects, including failing to ensure they completed properly training and understood the "Physician Training Manual." *Id.* at p. 5.

6

Additionally, Plaintiff argues that Defendants breached a purported duty to train under New York law, as "New York common law permits parties outside a contract to sue for tort damages arising out of negligently performed or omitted duties notwithstanding the lack of privity." *Id.* at p. 6. According to the Amended Complaint, "New York Law recognizes that in under certain situations a defendant who undertakes to perform services may be subject to liability to a third party for failing to exercise due care in rendering such services." ECF No. 26, ¶ 68.

    The Court finds that this cause of action is both expressly and impliedly preempted. The cause of action is expressly preempted, as it appears to require Defendants to provide training or seek assurances regarding training that are greater than those required by the FDA. As Defendants correctly point out, the "FDA specifically approved Essure's required physician training, and by law any training requirements must appear in the device's approved labeling, 21 U.S.C. § 360j(e), as Plaintiff has conceded, *see* ECF No. 29 at PageID 615." ECF No. 39, p. 10. Plaintiff's proposed training arguments improperly exceed the FDA's requirements. *See Eng. v. Bayer Corp.*, 468 F. Supp. 3d 573, 579 (W.D.N.Y. 2020) (finding that Plaintiff's claims for additional training would be "different [from], or in addition to" what is required by the FDA and are, therefore, expressly preempted by the MDA).

    Further, the aspects of this cause of action arising purportedly under New York law are impliedly preempted, as there is no clearly articulated state law duty or cause of action to parallel the federal training requirements. *See id.* at 580 ("plaintiffs have not pled any parallel state law cause of action that supports their negligent training claims, nor does their opposition to the instant motion identify any New York law establishing liability on the part of a non-employer for injuries to third parties arising out of alleged negligent training"). Plaintiff here similarly fails to

7

identify relevant New York law to support such a duty.[1]

### B. Count Two: Manufacturing Defect

Plaintiff also asserts a claim for manufacturing defect, alleging that "there were manufacturing defects in her Essure device that caused the device to migrate, break, fracture, or deteriorate." ECF No. 40, p. 8. Plaintiff alleges that Defendants deviated from the FDA-approved design and the device included latent defects. *Id.* Further, she alleges a New York common law negligence claim based on manufacturing defect. *Id.* In response, Defendants argue that Plaintiff fails to identify a specific manufacturing defect that Defendants failed to comply with, fails to identify specific defects in her device, fails to plead with sufficient specificity, and fails to show causation for her injuries. ECF No. 39, pp. 12-14. The Court disagrees and finds that this cause of action is not expressly and impliedly preempted.

The Court finds that Plaintiffs' claims as to the alleged manufacturing defect are not expressly preempted, as she alleges Defendants deviated from the FDA manufacturing standards.[2] *See Hawkins v. Bayer Corp.,* No. 1:21-CV-00646-RP, 2022 WL 2761379, at *12

---

[1] The Amended Complaint does allege, "New York Law recognizes that in under certain situations a defendant who undertakes to perform services may be subject to liability to a third party for failing to exercise due care in rendering such services." ECF No. 26, ¶ 68. However, the Court does not find this claim supports a state law duty to train relevant to this claim.

[2] Plaintiff's allegations regarding noncompliance with the FDCA include:

"The Essure devices implanted in Plaintiff was not reasonably safe for its intended uses and was defective as described herein as a matter of law with respect to its manufacture, *in that it deviated materially from Defendants' design and manufacturing specifications* in such a manner as to pose unreasonable increased risks of serious bodily harm to Plaintiff." ECF No. 26, ¶ 78 (emphasis added).

"The Essure devices manufactured and sold by Conceptus and Bayer and implanted into Plaintiff was *defective in manufacture because they did not comply with Defendants' own design specifications, used non-conforming material, and*

(W.D. Tex. Feb. 1, 2022) ("manufacturing defect claims may only proceed if she alleges specific manufacturing requirements imposed by the FDA which Bayer failed to adhere to"), *report and recommendation adopted,* No. 1:21-CV-646-RP, 2022 WL 2718541 (W.D. Tex. Feb. 23, 2022); *Norman v. Bayer Corp.*, No. 3:16-CV-00253 (JAM), 2016 WL 4007547, at *3 (D. Conn. July 26, 2016) ("In order to avoid preemption on a manufacturing defect claim, plaintiff must allege that her device was not manufactured in conformance with the specifications approved by the FDA."). Here, Plaintiff's claims point to numerous potential flaws with the device that, if proven, may show that the device failed to comply with the design specifications for the device.

In addition, the Court finds that this cause of action is not impliedly preempted. In order to escape implied preemption, Plaintiff "must allege that the irregularities . . . resulted in a manufacturing defect that caused her injuries." *De La Paz*, 159 F. Supp. 3d at 1094. As previously stated, Plaintiff alleges specific issues with her device that may have caused her injuries.[3] Plaintiff additionally alleges a duty of care under New York

---

> *deviated from otherwise identical units from the same product line, manufactured with the same specifications*." *Id.* at ¶ 79 (emphasis added).
>
> "At the time the Essure devices left control of Defendants when it was implanted into Plaintiff, *they were unreasonably dangerous due to non-compliance with the FDCA*, and the regulations promulgated pursuant to it." *Id.* at ¶ 82 (emphasis added).

[3]   Plaintiff's allegations regarding manufacturing defects include:

> *77. There were multiple manufacturing defects in the Essure device that was implanted into Plaintiff which caused Plaintiff's device to migrate and/or break/fracture apart and/or caused Plaintiff to experience long-term chronic pain, infection, abdominal swelling amongst other side effects*, which included, but not limited to:
> a. The stainless steel *used in the device became unpassivated*, which can cause the device to rust;
> b. the nitinol could have a nickel rich oxide which the body attacks;
> c. the no lead solder could in fact have trace lead in it;
> d. the Galvanic action between the metals used to manufacture Essure®, which

9

law that is parallel to Defendants' duties under the FDCA and FDA regulations. *See* ECF No. 26, ¶ 83-85.

Applying the Rule 12(b)(6) standard to these allegations, and accepting them as true, leads the Court to conclude that these manufacturing defect claims are not impliedly preempted. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010) ("Here . . . , the plaintiff claims breach of a well-recognized duty owed to her under state law—the duty of a manufacturer to use due care in manufacturing a medical device. She may do so as long as she can show that she was harmed by a violation of applicable federal law. Her claim is not impliedly preempted by federal law."); *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 105-06 (D. Conn. 2014) (rejecting preemption where plaintiff alleged, among other facts, that his doctor informed him that the batch from which his implanted liner came was manufactured outside the defendant's specifications and that the batch was being recalled); *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 155 (S.D.N.Y. 2011) (finding manufacturing defect claim not preempted where the plaintiff alleged that the product was manufactured with "'manufacturing residuals' that exceeded [defendant's] internal acceptance criteria" and that the device was "adulterated").

---

causes the encapsulation of the product within the fallopian tubes, could be a continuous irritant to some patients;
e. the nitinol in the device can degrade due to High Nickel Ion release, increasing the toxicity of the product for patients;
    . . .
i. *there was an inadequate solder joint* between the inner and outer coils of the micro-insert which can cause the micro-insert to fracture/break apart, which could be a reason for device breakage, and;
j. *the central axis was not fully adhered* to the spring which can cause the micro-insert to fracture/break apart, which could be a reason for the device breakage.

ECF No. 26, ¶ 77 (emphasis added).

Additionally, the facts set forth in the Amended Complaint plausibly demonstrate potential causation between the alleged harm and the injuries. *See Rosen v. St. Jude Med., Inc.*, 41 F. Supp. 3d 170, 181 (N.D.N.Y. 2014) (concluding that a claim alleging that the defendant violated the premarket approval, as long as it is "supported by sufficient factual evidence of the violation and demonstrate[s] a causal connection to the alleged injuries," satisfies *Twombly*).

Defendants argue that Plaintiff "fails to identify violations of federal requirements that produced specific defects in Plaintiff's device and actually caused her injuries." ECF No. 39, p. 12. Defendants further claim that the allegations are vague and do not show causation to "articulate *how* any alleged . . . manufacturing defect . . . actually caused her injuries." *Id*. at pp. 13-15. However, the Court finds that the specific allegations of defects as to the device outlined in the Amended Complaint adequately plead sufficient concerns that the devices did not comply with manufacturing requirements and likely could have caused harm to Plaintiff. *See* ECF No. 26, ¶ 77 (alleging, with specificity, that the device "became unpassivated" and there was an "inadequate solder joint" with theories of how these issues could have harmed Plaintiff). Even though the Amended Complaint includes *general* allegations for how the *specific* alleged manufacturing defects may have violated FDCA specifications, the Court concludes that, given the specific alleged manufacturing defects coupled with the alleged theories of causation regarding Plaintiff's injuries, Plaintiff's pleadings as to this claim are sufficient at this phase of litigation to survive dismissal.

### C. Count Three: Breach of Warranty

Finally, Plaintiff asserts claims for breach of warranty, including "journal articles,

11

advertising media, and sales representatives to promote, encourage, and urge the use and purpose of the Essure device . . . thereby making an express warranty that Essure would confirm to the representations." *Id.* at ¶ 92.  Additionally, Plaintiff argues "Defendants also represented that Essure was the 'most effective permanent birth control method available'" in a press release. *Id.* at ¶ 93.

Courts have held that such a similar claim for breach of warranty would be expressly preempted, as such a determination would require "persuad[ing] a jury" that Essure was "not safe and effective, a finding that would be contrary to the FDA's approval." *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1208 (8th Cir. 2010); *see also Dains v. Bayer HealthCare LLC*, No. 522-CV-208 (BKS/TWD), 2022 WL 16572021, at *9 (N.D.N.Y. Nov. 1, 2022) ("Plaintiff has not alleged that Defendants' allegedly deceptive conduct—representing that Essure is 'safe and effective'—violated any provision of the FDCA or MDA. Any such claim would therefore be expressly preempted by the MDA."); *De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1098 (N.D. Cal. 2016) ("De La Paz has failed to plead facts that plausibly indicate that Bayer breached a warranty made beyond statements approved by the FDA.").  The Court agrees with the persuasive analysis in these cases and finds that this claim is expressly preempted by the MDA.[4]

### IV.   CONCLUSION

The undersigned respectfully recommends to Judge Gujarati that the Motion to Dismiss

---

[4] Defendant asserts additional arguments in seeking to dismiss the Amended Complaint, including that Plaintiff's warranty claim is facially untimely.  *See* ECF No. 39, at p. 15.  Based on the foregoing recommendation that the Court dismiss this Count, "the Court need not address [D]efendants' other arguments" as to this claim.  *Brady v. Top Ships Inc.*, No. 17-CV-4987, 2019 WL 3553999, at *17 (E.D.N.Y. Aug. 5, 2019), *aff'd sub nom. Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020).

be GRANTED WITH PREJUDICE as to the First and Third Counts of the Amended Complaint. However, the Court recommends that the Motion to Dismiss Count Two be DENIED.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Gujarati. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
       December 13, 2022

SO ORDERED:

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge